UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Crystal Weaver Brown, on behalf of K.M.M. 1491, | ) ) ) | C/A No. 5:15-0320-KDW |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | ORDER |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff Crystal Weaver Brown ("Plaintiff") brings this action on behalf of her minor child, KMM, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. Having carefully considered the parties' submissions and the applicable law, the court *affirms* the Commissioner's decision, as discussed herein.

I.    Relevant Background

A.    Procedural History

In June 2012, Plaintiff applied for SSI on KMM's behalf alleging a disability onset date of March 5, 2000.[1] Tr. 144-47. In the form disability report, KMM's disabling conditions were

---

[1] Plaintiff previously applied for SSI on KMM's behalf in February 2009. That application was denied, and Plaintiff did not appeal the decision. *See* Tr. 60. Plaintiff asserts that "applications

listed as asthma and allergies, acid reflux and gastroesophageal reflux disease ("GERD"), scoliosis of the spine, craniostenosis, and spondylolisthesis. Tr. 177. The application was denied initially on August 30, 2012, Tr. 68-69, and upon reconsideration on December 12, 2012, Tr. 81-82, and Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), Tr. 93-95. ALJ Thomas G. Henderson conducted a hearing on September 5, 2013. Tr. 44-58. The ALJ issued an unfavorable decision on September 20, 2013. Tr. 26-39. The Appeals Council denied Plaintiff's request for review on November 26, 2014, making the ALJ's decision the final decision for purposes of judicial review. Tr. 1-8. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on January 23, 2015. ECF No. 1.

      B.     KMM's Background

     KMM was born prematurely in March 2000 with a birth weight of 800 grams. Tr. 444. As a low-birth-weight baby he automatically qualified for SSI for a one-year "non-permanent disability." Tr. 153. KMM had several surgeries throughout his childhood. KMM underwent cranial reconstructive surgery when he was one year old. Tr. 406-07, 519, 521. When he was three years old he had surgery to remove a mass on his vocal cords. Tr. 400-04, 520. KMM underwent surgery for heel cord lengthening when he was nine years old. *See* Tr. 505, 509. On October 16, 2012, when he was 12 years old, KMM had surgery to decompress his spine. Tr. 518.

     KMM was 12 years old on the date his application for SSI was filed and 13 years old on the date of the administrative hearing. Tr. 47, 144. As of the date of the hearing, KMM was in the eighth grade. Tr. 47.

---

were filed on December 15, 2003, February 26, 2007, February 10, 2009 and June 26, 2012 and were denied." *See* Statement of Claim, Pl.'s Br. 1, ECF No. 42.

C.    The Administrative Proceedings

Plaintiff and KMM, along with their non-attorney representative, appeared in Charleston, South Carolina for an administrative hearing on September 5, 2013. Tr. 44, 51-70.

1.    KMM's Testimony

In response to questions from the ALJ, KMM testified that he was 13 years old and in the eighth grade. Tr. 47. He stated that he spent the past summer relaxing around the house, playing video games, and watching TV. Tr. 47-48. KMM also testified that he played basketball with his friends. Tr. 48. KMM stated that in school he liked math but did not like social studies. *Id.* KMM testified that he had two brothers, one aged 17 and his 13-year-old twin brother. Tr. 49.

In response to questions from his representative, KMM testified that although he stated that he played basketball at home, he did not play at school because he had "back problems." Tr. 49. KMM testified that when he tries to play at school his back starts hurting and he "can't move as fast as the other kids." Tr. 50. KMM stated his knees also hurt when he plays. *Id.* KMM described the pain as feeling "stiff." *Id.* KMM testified that he was unable to join the basketball team at school and also unable to join the tennis team because he could not "run as fast." Tr. 51. KMM testified that he played tennis as a hobby and had started playing the previous year. *Id.*

The representative noted that KMM was a twin and his birth weight was less than two pounds. Tr. 52. The representative also noted that KMM was on SSI for the first year, however benefits were automatically discontinued "after the first year, assuming that he would get better. But his health condition continued to get worse." *Id.*

2.      Plaintiff's Testimony

In response to questions from the representative, Plaintiff testified that KMM's SSI stopped after one year because "[t]hey said he was no longer disabled." Tr. 53. She stated there were no medical records that showed he had improvements. *Id.*

The ALJ interrupted to confirm that the current SSI application was a "new application" and not a "termination – succession." Tr. 53. Plaintiff's representative confirmed it was a new application filed in June 2012. The representative resumed questioning of Plaintiff, and Plaintiff testified that she also filed an application in 2008 or 2009 that was denied because "they said he wasn't disabled." *Id.*

Plaintiff testified that KMM has asthma and "has to go to the emergency room at least maybe three times a year, especially if the season change or if he's outside playing in the grass and you just can't stop it." Tr. 53. Plaintiff testified that KMM has back problems and due to scoliosis had surgery in October of the previous year to fuse his spine. Tr. 54. Regarding KMM's legs Plaintiff testified that KMM "has a lot of cramps, like if he tries to get out and run or play basketball he just—they give out and start cramping." Tr. 55. She stated that KMM "stays in the house a lot." *Id.* Plaintiff testified that KMM's grades were good and confirmed that he had no problems with his teachers, no problems listening, and no problems socially—his problems were physical and not mental. *Id.*

In response to the ALJ, Plaintiff testified that KMM's last asthma episode was in January when he went from the doctor's office to the emergency room where they were able to stop the asthma attack. Tr. 56. Plaintiff testified that KMM had never been hospitalized for asthma. *Id.*

Plaintiff testified that KMM had other prior surgeries including head reconstruction, tissue removed from his larynx, and the "tendons in the back of his legs had to be lengthened

4

because they were tight." Tr. 56-57. Plaintiff testified that KMM takes Motrin for his back pain. Tr. 57. She also stated that KMM sometimes "wakes up with cramps because maybe he laid the wrong way and it gets stiff or something." *Id.*

Before the ALJ closed the record the representative stated that KMM's limitations "interfere with his balance and that kind of prevents him from doing things that other children his age would be able to do." Tr. 57-58. The representative also noted that she was not sure how much more KMM would be able to improve. Tr. 58.

D.     The ALJ's Findings

In his September 20, 2013 decision, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant was born on March 5, 2000. Therefore, he was an adolescent on June 8, 2012, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.     The claimant has not engaged in substantial gainful activity since June 8, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: status-post L4-5 fusion and asthma (20 CFR 416.924(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.     The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.     The claimant has not been disabled, as defined in the Social Security Act, since June 8, 2012, the date the application was filed (20 CFR 416.924(a)).

Tr. 32-39.

II.    Discussion

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

For purposes of eligibility for children's disability benefits under the Act, an individual under age 18 will be considered disabled if he or she has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations in adult disability matter and noting "need for efficiency" in considering disability claims). The Commissioner's regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity ("SGA"); (2) determine whether the child has a severe impairment or impairments; (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment found in the Listings. *See* 20 C.F.R. § 416.924, 20 C.F.R. pt. 404, subpt. P, app. 1.

In determining whether a claimant has engaged in SGA, the Commissioner uses the same rules for children under age 18 as she does for adults. 20 C.F.R. § 416.924(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 416.972(b). Generally, if an individual has earnings from employment or self-

employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974; 20 C.F.R. § 416.975. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the claimant does not have a medically determinable severe impairment(s), he is not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a Listed impairment, or that functionally equals one of the impairments found in the Listings. In making that determination, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923; 20 C.F.R. § 416.924a(b)(4), and 20 C.F.R. § 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the Listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. 20 C.F.R. § 416.924(d). If he does not satisfy any of these three steps, he is not disabled. *See* 20 C.F.R. § 416.924(b)-(d).

In determining whether a claimant meets one of the impairments in the Listings, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the Listed impairment. "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement ... then [the claimant] 'is conclusively presumed to be disabled and entitled to benefits.'" *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (quoting *Bowen v. City of New York*, 476 U.S. 467, 470-71(1986)). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is not enough that the impairment have the diagnosis of a Listed impairment, the claimant must also have the findings shown in the Listing of that impairment. 20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987) (noting the claimant's burden to show that his impairment is presumptively disabling and to furnish medical evidence regarding his condition).

If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements. *See* 20 C.F.R. § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, which are broad areas of functioning, intended to capture what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i) through (vi). To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that

results either in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1). The Commissioner will find that a claimant has a "marked" limitation in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions are limited. *See id.*

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial

evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

Plaintiff alleges the ALJ erred (1) by failing to properly consider and evaluate opinions of KMM's treating sources from 2001 to the present, and (2) in finding that KMM had less than marked limitation in the domain of Attending and Completing Tasks. Pl.'s Br. 2-3, ECF No. 42. Plaintiff also asserts KMM had marked limitations in the domain of Moving About and Manipulating Objects and the domain of Health and Physical Well-Being. *Id.* at 6. The Commissioner contends that under the regulations the relevant time period for consideration of SSI began on July 1, 2012 (the month after Plaintiff filed the application), and Plaintiff needed to prove KMM was disabled from July 2012 to September 2013 (the date of the ALJ's decision). Def.'s Br. 3, ECF No. 43. The Commissioner argues that the ALJ reasonably found KMM's impairments did not functionally equal the listings. *Id.* at 7. In her Reply, Plaintiff again asserts arguments regarding the domains, and also asserts that KMM's physical impairments functionally equal the Listings. Pl.'s Reply 7-9, ECF No. 44.

### 1. Treating Physician Opinions

Plaintiff asserts the ALJ failed to properly consider the "opinions of KMM's treating sources . . . whom [sic] made all key decisions in 2001 concerning [KMM's] care which continues up to today." Pl.'s Br. 2-3. Plaintiff names Dr. Katrina B. Doig,[2] Dr. Murray H. Passo, Dr. Christine Carter Kent, Dr. Stephen Kinsman, Dr. Michael L. Leonardi, Dr. Davidson, Dr. Reed, and Dr. James F. Mooney, III. *Id.*

Social Security regulations require that all medical opinions in a case be considered. 20 C.F.R. § 416.927(b). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions, but rather, are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 at *2 (July 2, 1996). "However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* at *3.

"Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the

---

[2] Dr. Doig is not a treating physician but is a State agency physician who, on December 12, 2012, reviewed KMM's medical files and other evidence of record and determined that he was not disabled. Tr. 74-78.

consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20 C.F.R. § 416.927(c).

Social Security Ruling 96–2p provides that when an ALJ's decision is not fully favorable the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. In reviewing the ALJ's consideration of the opinions of Plaintiff's treating physician, the court is focused on whether the ALJ's opinion is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

For purposes of Plaintiff's SSI application, the relevant time period began on July 1, 2012 (the first date of the month following the date on which Plaintiff filed the SSI application) (Tr. 179). *See* 20 C.F.R. § 416.202 (stating a claimant is not eligible for SSI until, among other factors, the claimant files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month claimant satisfies the eligibility requirements, which cannot predate the date on which an application was filed); *see also Torres v. Chater,* 125 F.3d 166, 171 n.1 (3d Cir. 1997) (noting that SSI benefits are not payable for any period prior to the filing of an application). The relevant time period with respect to KMM's SSI claim ended on September 20, 2013, the date of the ALJ's decision. *See* 20 C.F.R. § 416.330 (stating that an application for benefits remains in effect until the date of the ALJ's decision).

The record indicates KMM was seen by various physicians throughout his life, including the following doctors who treated him close to the period Plaintiff filed the application for SSI.[3]

On August 8, 2011, Dr. Frederick E. Reed of MUSC's Department of Orthopaedic Surgery examined KMM at the request of Dr. Michael Leonardi for consultation and evaluation regarding leg, foot, and knee deformity. Tr. 435. Dr. Reed determined that KMM did not need orthotic control and they would "just work to improve the external rotation" and later "convert him to shoes with arch supports in a year when he returns." Tr. 436. On April 18, 2012, Dr. Reed again saw KMM after a consultation request from Dr. Leonardi regarding KMM's back pain. Tr. 270. Dr. Reed diagnosed KMM with congenital spondylolisthesis and contractures of the lower extremity. Tr. 271. Dr. Reed determined that KMM should use a brace and get some flexibility and possibly consider surgery. *Id.*

On October 18, 2011, KMM was seen by Dr. Christine Carter-Kent of MUSC Pediatric GI in follow-up to a visit in April 2011. Tr. 282. KMM complained of abdominal pain and constipation. *Id.* Dr. Carter-Kent noted that the clinic was following KMM for reflux esophagitis, chronic constipation, and lactose intolerance and further management of these conditions was discussed with KMM and Plaintiff. Tr. 284. KMM was scheduled to return for follow-up in six months. *Id.*

Dr. Andrew Davidson of Allergy & Asthma Consultants examined KMM on May 7, 2012, for his six-month follow-up related to asthma. Tr. 273. Dr. Davidson noted that KMM's last office visit was January 23, 2012, and that he had been doing reasonably well but the night before "after playing basketball he had [an] asthma attack, he was wheezing and short of breath

---

[3] Many of the medical records from MUSC are not in order and have pages missing. *See* exs. 16F-21F, Tr. 429-531.

until he used albuterol." *Id.* KMM was instructed to continue his current medication regimen and return for follow-up in four months. Tr. 273-74.

Dr. James F. Mooney of MUSC's Department of Orthopaedic Surgery examined KMM on June 27, 2012, and recommended he have an "MRI of his lumbosacral area to assess the intracanal abnormalities and overall tightness." Tr. 269. Dr. Mooney noted that depending on the MRI results, KMM "may be a candidate for L4-5, L5-1 fusion possibly with decompression." *Id.* On November 8, 2012, Dr. Mooney saw KMM in follow-up after spinal surgery and noted the following:

> Clinically, he is doing well. He is motor and sensory intact in the upper and lower extremities. His wounds are well healed.
>
> Radiographs today show good position of his implants. No loss of position or fixation. He has had some incidental reduction of his listhesis at the time of surgery.

Tr. 367. Dr. Mooney instructed KMM to progressively increase his activities and he was given a physical therapy prescription "for range of motion and strengthening of his lower extremities." *Id.* Dr. Mooney stressed that KMM needed to "walk as much as possible and get his stamina and his activity level back up." *Id.* KMM was instructed to return in six weeks with x-rays. *Id.*

On October 30, 2013, KMM was seen in a new consultation by Dr. Stephen Kinsman of MUSC Pediatric Neurology regarding his complaints of migraine headaches. Tr. 432. Dr. Kinsman treated KMM "with a course of Naprosyn, daily topiramate and Symmetric 10 when needed." Tr. 450. Dr. Kinsman also referred KMM to "genetics to see if we can figure out whether he has syndrome a craniosynostosis. I'm concerned about the joint pain or refer him to pediatric rheumatology." *Id.*

KMM was seen in November 2013 by Dr. Murray H. Passo of MUSC Pediatric Rheumatology. Tr. 513. Dr. Passo noted that KMM did not have an inflammatory arthropathy and he could not link his medical findings to a single diagnosis. *Id.*

The applicable regulation defines "opinions" as statements from medical sources that "reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . what [the claimant] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). None of these treatment notes constitute a medical opinion requiring consideration and weighing by the ALJ. 20 C.F.R. § 416.927(c) (an ALJ is only required to state the weight ascribed to medical opinions). While the ALJ is required to weigh relevant medical opinions, he need not discuss every shred of evidence in the record, and is under no duty to explicitly refer to every exhibit. *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 Fed. Appx. 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

In December 2012, a state agency physicians, Dr. Katrina B. Doig (Pediatrics) and Dr. Lisa Clausen (Psychology), reviewed the medical records and evaluated KMM under the six domains for childhood disability. Tr. 75-77. They found "no limitation" in the domains of Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself. Tr. 75-76. They determined KMM had "marked" limitation in the domain Moving About and Manipulation of Objects, and "less than marked" limitation in the domain Health and Physical Well-Being. Tr. 76. With regard to KMM's functioning, Dr. Doig and Dr. Clausen found that his impairments did not functionally equal a listing. Tr. 77. Dr. Doig completed an assessment of KMM's symptoms and credibility and

weighing of opinion evidence. The only medical opinion listed in Dr. Doig's assessment was from an October 12, 2012, MUSC medical record related to post-surgery precautions where KMM's weight-bearing capability was limited to "as tolerated" and he was limited to "no lifting greater then (sic) 5 lbs."[4] *Id.* Based on the documented findings Dr. Doig determined KMM was "not disabled." Tr. 78.

In his evaluation of opinion evidence the ALJ discussed the Disability Determination Explanations submitted by Dr. Doig and Dr. Clausen. Tr. 34. The ALJ noted that these state agency physicians were non-examining but still gave their opinions "significant weight" as the "opinions are well supported by the weight of the evidence of record and are consistent with the claimant's presentation upon examination." *Id.* "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i); *see Smith v. Schweiker*, 795 F.2d at 345-46 (stating that the opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner).

Having considered the record evidence the undersigned finds that the ALJ adequately considered the relevant medical opinions. Ultimately, it is the responsibility of the Commissioner, not a reviewing court, to review the case, make findings of fact, and resolve

---

[4] No specific physician is credited with providing this opinion, but these limitations are noted in KMM's hospital discharge summary, which was dictated by Dr. Andrew Pham and Dr. Mooney. Tr. 361. Although the ALJ did not specifically discuss the discharge summary in terms of a treating physician opinion, he did discuss KMM's surgery and Dr. Mooney's follow-up examination. Tr. 34. Because Dr. Doig referenced the medical report and still found no disabling limitations, Plaintiff has failed to show how the ALJ's consideration of that opinion would have changed the ultimate decision here—especially because the ALJ gave significant weight to the opinions of Dr. Doig and Dr. Clausen. *Id.* Accordingly any error by the ALJ for failing to weigh KMM's post-surgical opinion is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits because the ALJ "would have reached the same conclusion notwithstanding his initial error").

conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A court must not, however, abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Based on the above, the ALJ's treatment of the medical opinions is supported by substantial evidence and is not contrary to law.

       2.   Listings

          a.  Listing 3.03 and Listing 1.04

The ALJ analyzed Plaintiff's claim under the three-step sequential evaluation process for children under the age of 18. Tr. 32. The ALJ found that KMM had not engaged in SGA since the application date and KMM had the severe impairments of status-post L4-5 fusion and asthma. However, the ALJ concluded that the impairments did not meet or equal the requirements of the Listing of Impairments. Tr. 32. The ALJ found as follows:

> Regarding Listing 1.03, no spirometry has apparently been performed on the claimant and there is no evidence to indicate that the claimant has suffered from asthma attacks requiring physician intervention/hospitalization, or resulting in persistent prolonged expiration, the use of corticosteroids, or a growth impairment, as required.

> To meet Listing 101.04, a disorder of the spine must result in compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. MRI examinations failed to reveal any significant herniations, stenosis or nerve root compression.

Tr. 32. The undersigned notes that the ALJ referred to Listing 1.03 in discussing KMM's asthma and Listing 101.04 in discussing KMM's spinal impairment. The correct Listing numbers are 3.03 Asthma and 1.04 Disorders of the spine. 20 C.F.R. Part 404, Subpart P, Appendix 1. While this may be considered a simple scrivener's error, the undersigned cannot overlook that the ALJ stated "no spirometry has apparently been performed on the claimant" yet later in his discussions

related to KMM's asthma, the ALJ references spirometry testing done in July 2011 with normal results. Tr. 33 (*see* July 18, 2011 Progress Note, ex. 5F/2 at Tr. 327). The record also contains results of spirometry testing conducted in 2011 and 2012. Tr. 328-33. The ALJ also indicated "there is no evidence to indicate that the claimant had suffered from asthma attacks requiring physician intervention/hospitalization" and later referenced a May 2012 asthma attack that did not require physician intervention. Tr. 33 (*see* May 7, 2012 Treatment Note, ex. 5F/9 at Tr. 334). However, the ALJ did not reference his colloquy with Plaintiff at the administrative hearing regarding KMM's 2011 trip to emergency room for treatment, Tr. 55-56, or the treatment notes related to that episode, Tr. 340-44.[5] There is no dispute that KMM was never hospitalized due to his asthma. Tr. 56. Despite these discrepancies in the ALJ's decision, Plaintiff has provided no evidence that KMM's impairments met the requirements of the Listings 3.03 and 1.04.

The regulations provide that the burden of establishing disability under the Listings is on the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(c); *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). It is not enough that the claimant has the diagnosis of a listed impairment; the claimant must also evidence the requirements for the listing of that impairment. 20 C.F.R. § 404.1525(d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. at 530.

---

[5] On November 22, 2011, KMM was seen by Dr. Jeffrey J. Dietrich of Allergy & Asthma Consultants for a sudden severe asthma exacerbation. Because he did not respond to in-office treatment, Dr. Dietrich had KMM transported to MUSC pediatric ER for treatment with "frequent nebs, O2, and steroids." Tr. 343-44. On December 12, 2011, KMM returned for follow-up and explained that the November episode was triggered when KMM "was at school outside [and] someone fell on him and pressed his face into the grass." Tr. 340. At the December visit, the doctor reported that KMM was "better now and free of asthma symptoms." *Id.*

b. The Six Domains

Plaintiff argues that substantial evidence does not support the ALJ's finding of less than marked limitation in the domain of Attending and Completing Tasks, and that KMM has "marked" limitations in the domain of Moving About and Manipulating Objects and the domain of Health and Physical Well-Being. Pl.'s Br. 3.

As required by the regulations, the ALJ considered whether KMM's impairments functionally equaled the Listings, and found they did not. *See* 20 C.F.R. § 416.926a. In making that finding, the ALJ considered each of the six functional domains, concluding that KMM "does not have an impairment or combination of impairments that result in either "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning." Tr. 34-39.

The ALJ found KMM had no limitations in acquiring and using information. Tr. 35. In support of this finding, the ALJ noted that there were "no allegations of any limitations in this area." *Id.* The ALJ cited Plaintiff's testimony that KMM gets good grades in school, and also cited to a psychological evaluation that indicated KMM was performing at or above his level of cognitive ability. *Id.* (citing to ex. 1F, Tr. 238-43).

The ALJ found KMM had no limitations in the domain of attending and completing tasks. Tr. 36. In support of this finding, the ALJ noted again that there were no allegations of any limitations in this area and Plaintiff testified that KMM's impairments were limited to physical rather than mental problems. *Id.* The ALJ acknowledged that KMM's seventh grade social studies teacher indicated he had some difficulty staying on task, but noted Plaintiff's testimony that KMM makes good grades and is working on grade level. *Id.* (citing to ex. 8E, Tr. 202).

In the domain of interacting and relating with others, the ALJ found KMM had no limitations. The ALJ noted that there were "no allegations that the claimant has any limitations in

this area and the evidence of record fails to demonstrate any difficulty in the claimant's ability to interact and relate with others." Tr. 37.

In the domain of moving about and manipulating objects the ALJ found KMM had less than marked limitation. Tr. 37. The ALJ cited to KMM's testimony that he plays basketball and tennis with his friends, although he unable to move as fast as others. *Id.* The ALJ determined that while KMM was "markedly limited in this area following his lumbar fusion, his condition has significantly improved." Tr. 38. The ALJ also noted that KMM's teacher found no limitations in this area. *Id.*

The ALJ found KMM had no limitation in the ability to care for himself and neither Plaintiff nor his teacher noted any limitations in this area. Tr. 38. Further the ALJ noted that KMM did not testify to any limitations in this area. *Id.*

This ALJ did find, however, that KMM had marked limitation in the domain of health and physical well-being, noting the surgeries KMM has had at a relatively young age and his need for physical therapy. Tr. 39. The ALJ also noted KMM's asthma diagnosis and the indication from the school nurse that KMM "routinely requires the use [of] an inhaler for asthma and takes Tylenol for back pain."[6] *Id.* (citing ex. 8E, Tr. 206).

In sum, the ALJ relied heavily on Plaintiff's and KMM's teacher's assessment of KMM's functioning in concluding that his impairments did not functionally equal the listings. Tr. 34-39. *See* SSR 09-2p, 2009 WL 396032, at *4 (Feb. 18, 2009) ("Evidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day

---

[6] The nurse's note actually states that "student has history of asthma - inhaler has not been administered [at] school yet this school year. Has history of migraines." Tr. 206. The nurse also commented that "Student recently returned to school after having back surgery. Has received Tylenol for [as needed] use for back pain since having surgery." *Id.*

functioning. These sources include parents and caregivers, educational personnel . . . ."). The undersigned finds that substantial evidence supports the ALJ's conclusion that KMM was not disabled since the date of his application for SSI.

3. Due Process

Citing to the Social Security Program Operations Manual System ("POMS"), Plaintiff also argues that KMM was denied due process when his previously granted SSI was discontinued after one year and that his benefits should be reinstated. Pl.'s Br. 1. The Commissioner argues that KMM was not denied due process on his prior SSI application because Plaintiff did not timely appeal the prior determination that allowed benefits on a non-permanent basis. Def.'s Br. 12. The Commissioner contends that POMS requires the Social Security Administration to "provide due process by giving notice to the claimant that the agency may stop benefits before terminating benefits" and Plaintiff does not allege she was not provided proper notice. *Id.* at 13. In response Plaintiff asserts that 15 years ago KMM's benefits were terminated "based on error code that was not corrected although Social Security Administration was advised of these errors by OIG." Pl.'s Reply 9.

Based on the letter of Plaintiff's representative to the Appeals Council it appears that Plaintiff's argument regarding a coding error does not apply to KMM. In the representative's November 18, 2013 letter she alleges as follows:

> In March 2000 the Office of the Inspector General issued a report that in September of 1998, 12.8 percent of the 11.7 million disabled individuals was affected by an error code. Claimant [KMM] was born on March 5, 2000 of that same year.

Tr. 22. Although the OIG issued its report in 2000, the year in which the error occurred was in 1998—two years before KMM was born. Therefore, the coding error does not apply to KMM's claim and the court finds that no due process error occurred.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig*, 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

August 22, 2016                                                  Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge